## FAY and others *v.* ALLEN.

(*Circuit Court, N. D. New York.*   August 26, 1885.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT.
    Doane and Bugbee patent of March 9, 1880, for spoke-throating machine, *held*, infringed, as to the first three claims, by the spoke-throater manufactured by defendant under patents granted him August 10, 1880, and October 11, 1881, respectively; and Locke patent of April 17, 1877, *held*, not infringed by same.

2. SAME—ANTICIPATION—EVIDENCE.
    Where defendant testified to having conceived, constructed, and publicly used the invention *prior to the* patentees, and was corroborated by numerous witnesses, but it appeared that each machine he had made before patentees completed theirs and placed it on sale had been taken to pieces after being tested, and before being put on sale, or used otherwise than for the purpose of testing, and that he only commenced the construction of the first machine placed on sale by him after the patentees had completed their machine, satisfactorily tested it, and placed it in their ware-room: *held*, that anticipation was not established, and decree for complainant ordered.

3. SAME—COSTS—BILL DISMISSED AS TO ONE PATENT AND DECREE AS TO ANOTHER.
    Costs not awarded either party; the bill being dismissed as to one patent, and decree granted as to the other.

This was a suit for infringement of two patents on spoke-throating machines: the first granted Joseph R. Locke, April 17, 1877, No. 189,635, and afterwards assigned to complainant; the second granted complainant, as assignee of William H. Doane and George W. Bugbee, March 9, 1880, No. 225,355. The first three claims of the latter patent were charged to be infringed. The answer denied the validity and infringement of both, setting up as anticipations various earlier patents; also alleging prior public use of the Doane and Bugbee invention by Locke, the patentee of the above-named Locke patent, and by the defendant and others. The prior use by Locke relied upon consisted in a modification of the machine shown in the Locke patent, which was introduced by Locke shortly after the Locke patent was granted. This modification appeared to have only been tried at one test of the machine, which was then set aside and never used again, but was produced in evidence. The witnesses stated that the purpose of the modification was to reduce friction, and that it was not satisfactory. With respect to this use, it was contended by defendants that it was a use of the Doane and Bugbee invention with sufficient publicity to constitute anticipation. On the part of complainant it was contended that it was not such a use as suggested to Locke or any of the witnesses the operation of the Doane and Bugbee patent.

With respect to the defendant's use, defendant testified to having conceived the invention of the Doane and Bugbee patent in April, 1878, and made a rough sketch upon a board about that time to illustrate it, exhibiting this sketch to a person with whom he was talking; to have commenced, immediately after, the construction of a ma-

chine, and to have completed it, and publicly operated it, in September, 1878. A large number of witnesses testified in corroboration of defendant, some of them fixing their dates by book entries, and those who saw the machine operate stating that it operated successfully. On cross-examination it appeared that the machine built in September was only operated experimentally in the shop where it was built, and immediately after, by order of defendant, taken to pieces, the patterns burned and the castings melted; that a drawing of a new machine exhibiting, or claiming to exhibit, the features in controversy was made by defendant in October, 1878, and the construction of the new machine completed so as to operate in March or April, 1879; that this machine was also torn to pieces by defendant in April or May, 1879, without having been put on sale or into practical use, and the construction of a new machine commenced thereafter, the new machine being completed about July, 1879, and sold the following December. No rebutting witnesses concerning this use were called on the part of complainant.

Doane and Bugbee did not claim to have commenced the construction of their machine before December, 1878. Their working drawings were made in January, 1879, and the machine satisfactorily tested on or before February 24, 1879, and then placed in the store-room, with other machinery, for sale. This particular machine was sold in September, 1879; other machines, differing in size, having been constructed and sold meantime. It was contended in behalf of defendant that the machine made in September, 1878, was only unsatisfactory in features other than those in controversy, and that the defendant anticipated this invention, both in conception and actual construction and public use. In behalf of complainant it was contended that whatever defendant did prior to the summer of 1879 was unsuccessful experiment; that this was sufficiently shown by the fact that defendant himself had torn his successive machines to pieces after having tested them; that, to defeat a patent by a prior use, it was necessary it should be a use of such character as to exhibit the invention as complete and practically operative, while the uses of defendant exhibited the contrary; that the failure of these machines tended to show that they did not possess the features attributed to them by the witnesses, whose memories were refreshed by association with defendant, by a model introduced in testimony made after the litigation commenced, and by familiarity with defendant's subsequent machines; and that the fact that defendant, when his application for patent (which originally claimed the subject-matter in controversy) was rejected on the Doane and Bugbee patent, did not claim priority or seek an interference, tended strongly to show that he did not at that time consider himself to have made the invention substantially earlier than the date of their application.

*Parkinson & Parkinson*, for plaintiff.
*Duell & Hey*, for defendant.

BLATCHFORD, Justice.　The claim of the Locke patent is a claim to a combination of mechanism, and is as follo,ws:

"The combination of the sliding frame, B, provided with the curved guides, b', the pivoted frame, D, the spring, H', the shafts, E, and the cutter-heads and cutters, F, G, with each other, and with the uprights, C, and the main frame, A, substantially as herein shown and described."

In view of the state of the art, and of the claims made by Locke in his application and rejected, this claim to a combination must be construed strictly, and every element in it must be found in the defendant's structure to constitute infringement.　The spring, H', and the sliding frame, B, provided with the curved guides, B', are not found in the defendant's machine; nor is any one of them, or any substantial equivalent for it, found there.

As to the Doane and Bugbee patent, it is admitted that the first three claims of it are infringed, if they are valid.　The attempt of Locke to make a structure embodying these three claims was a mere experiment, and was abandoned, and not resumed.　It did not contemplate the use of the spoke as a guiding element.　The machine of Doane and Bugbee was completed, and practically and successfully worked, prior to February, 24, 1879.　The two machines on which Allen worked before July, 1879, were neither of them put to any practical work, and each of them was destroyed as useless.　He did not commence till April, 1879, the construction of the successful machine which he completed.　The fact that when Allen applied for his patent, his claims were rejected as anticipated in the Doane and Bizbee patent, and he did not apply for an interference, is of weight to show that he did not then claim priority to Doane and Bugbee, because he accepted a patent without the rejected claims.

There must be a decree dismissing the bill as to the Locke patent, and awarding an injunction and an account of profits and damages as to the first three claims of the Doane and Bugbee patent, without costs to either party to and including the hearing.　The question of subsequent costs is reserved.